IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LINH THI MINH TRAN,  No. 3:16-cv-01971-HZ

        Plaintiff,  OPINION & ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Linh Thi Minh Tran
12542 SE Capella Court
Happy Valley, OR 97086

    Pro Se Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

Brett Edward Eckelberg
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Pro Se Plaintiff Linh Thi Minh Tran brings this action for judicial review of the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on February 7, 2013, alleging disability as of November 1, 2011. Tr. 110.[1] Her applications were denied initially and on reconsideration. Tr. 136–43, 153–58. On February 17, 2016, Plaintiff appeared, with counsel and an interpreter, for a hearing before an Administrative Law Judge (ALJ).[2] Tr. 55. On March 8, 2016, the ALJ found Plaintiff not disabled. Tr. 36–37. The Appeals Council denied review. Tr. 7.

## FACTUAL BACKGROUND

Plaintiff initially alleged disability based on vision problems and back pain. Tr. 297. She was 46 at the time of the administrative hearing. Tr. 62. Plaintiff has at least a high school education and past relevant work experience as a library page. Tr. 35.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 25.
[2] The record shows that Plaintiff had two prior incomplete Social Security hearings. Plaintiff appeared at the first hearing on June 26, 2015, but it was set over when the ALJ determined that the medical file was incomplete. Tr. 47–54. The second hearing was set for November 9, 2015, but Plaintiff had difficulties with the security officers upon entering hearing office so the hearing did not take place. Tr. 24.

2 - OPINION & ORDER

# SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of November 1, 2011. Tr. 27. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairment: "visual disorder of the left eye." Tr. 27. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 29. At step four, the ALJ concluded that Plaintiff has the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: frequently reach, handle, finger, and feel; no exposure to heights, hazards, and heavy equipment; no exposure to chemicals; and no exposure to temperature extremes (hot or cold). The claimant is limited to vision with the right eye only. The claimant can read with the right eye only. The claimant should avoid tasks involving depth perception.

Tr. 29. With these limitations, the ALJ concluded that Plaintiff could perform her past relevant work as a library page. Tr. 35. At step five the ALJ also found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "Busboy," "Laundry Sorter," and "Food Tray Assembler." Tr. 36. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 36.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

**DISCUSSION**

Plaintiff argues that the ALJ erred at step three in finding that Plaintiff's physical impairments did not meet or medically equal one of the listed impairments.[3] Pl.'s Am. Opening Br. 17–24, ECF 39. If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the "Listing of Impairments," then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs. 20 C.F.R. § 404.1520(d). An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). A boilerplate finding is

---

[3] Plaintiff also generally asserts that the ALJ's findings are not supported by substantial evidence. Pl.'s Am. Opening Br. 6–7. The Court has reviewed both the ALJ's decision and the record and finds that the ALJ's opinion is supported by substantial evidence.

5 - OPINION & ORDER

insufficient to support a conclusion that a claimant's impairment does not do so. *Id.* (citing *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir. 1990) (holding that ALJ erred by failing to consider evidence of equivalence)). However, the Ninth Circuit has explained that, while an ALJ must discuss and evaluate the evidence that supports her conclusion, it is not required that she do so under the heading "Findings." *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013). "Moreover, '[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.'" *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005)).

Plaintiff argues that (1) the ALJ erred in finding that Plaintiff's visual impairment did not met the statutory definition of blindness under the Social Security Act or the Listing for visual impairments[4] and (2) that Plaintiff's other physical impairments meet or medically equal listed impairments. Pl.'s Am. Opening Br. 17–18, 21, 23, 24; Pl.'s Reply 4, ECF 45. Addressing each argument in turn, the Court finds that the ALJ's decision at step three was supported by substantial evidence and affirms the ALJ's decision.

I. **Visual Impairments**

Plaintiff contends that the ALJ erred in finding that her visual impairment did not meet the statutory definition of blindness under the Social Security Act. Pl.'s Am. Opening Br. 17–18. A claimant is statutorily blind if they meet the requirements of Listing 2.02 or 2.03A.[5] Listing

---

[4] The Social Security Act defines blindness as having the "central visual acuity of 20/200 or less in the better eye with the use of a corrective lens." 42 U.S.C. § 1382c(a)(2). It further notes that "an eye which is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees shall be considered . . . as having central visual acuity of 20/200 or less." *Id.* The Listings provide a nearly identical definition for loss of central visual acuity and contraction of the visual field. The Listings define "loss of visual acuity" as the "remaining vision in the better eye after correction is 20/200 or less" and "contradictions of the visual field in the better eye" as, among other things, "the widest diameter subtending an angle around the point of fixation no greater than 20 degrees." *See* Listings 2.02–2.03.

[5] Listings referred to in this Opinion and Order can be found at 20 C.F.R. pt. 404, subpart P, app 1.

2.02 for "loss of central visual acuity" requires the claimant to show that the "remaining vision in [their] better eye after best correction is 20/200 or less." Listing 2.03A requires that the claimant's widest diameter subtending at an angle around the point of fixation" in their better eye is "no greater than 20 degrees." If a claimant provides evidence showing that their central visual acuity or visual field in their better eye meets applicable criteria in the Listings, the claimant will be considered statutorily blind "provided that those measurements are consistent with the other evidence in [their] case record." *See* Listing 2.00A3

In making his step-three finding, the ALJ is responsible for resolving conflicts in the record. *Garrison*, 759 F.3d at 1009 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." (quoting *Andrews*, 53 F.3d at 1039)). For example, in *Lewis,* the Ninth Circuit affirmed the ALJ's decision that the plaintiff's impairment did not meet the Listing for epilepsy as he had "discussed and evaluated evidence supporting his conclusion that [the plaintiff's] symptoms did not persist when he took his medication." 236 F.3d at 513. There, to meet the criteria of the relevant listing, the plaintiff's epilepsy had to cause symptoms even with proper medication compliance. *Id.* The ALJ found both that the plaintiff had poor medication compliance and that, with proper compliance, his seizures were under good control. *Id.* The plaintiff pointed out at least one comment in the record that indicated the opposite: that the plaintiff's seizures were not "fully controlled despite therapeutic levels of" his epilepsy medications. *Id.* However, the Ninth Circuit held that "because the evidence of [the plaintiff's] compliance conflicted, the ALJ could conclude that [the plaintiff] failed to take his medications, so long as substantial evidence supported that conclusion, as it did." *Id.* at 513–14.

Similarly, in this case the ALJ acknowledged that Plaintiff's visual impairment would meet or medically equal Listing 2.02 based on the findings of Dr. Holland, a treating optometrist who saw Plaintiff periodically between 2013 and 2015. Tr. 29. However, the ALJ found that other evidence in the record casts doubt on Dr. Holland's findings. Specifically, he cited to an electroretinography study by an examining physician that indicated Plaintiff's right eye was normal, evidence that Plaintiff's limitations were functional—not organic—in nature, conflicts with Plaintiff's activities of daily living, and inconsistencies in the record with regard to Plaintiff's right eye issues. Tr. 27, 29. The ALJ also noted that "Dr. Tran explained that the claimant typically listed symptoms out of proportion to the actual findings." Tr. 27. Accordingly, the ALJ found Plaintiff's right eye problems were non-severe and that her visual impairment did not meet or medically equal Listings 2.02, 2.03, or 2.04. Tr. 29.

The ALJ's interpretation of the record as to Plaintiff's right eye is supported by substantial evidence. In this case, Plaintiff's visual tests suggested that the vision in her right eye—her better eye for the purposes of this analysis—was worse than 20/200. Tr. 429, 435, 461, 468. However, as the ALJ noted, Plaintiff's treating and examining doctors stated that there was no organic reason for the Plaintiff's right eye issues. Tr. 431–32, 435, 470. Further, Plaintiff's treating physician, Dr. Tran, indicated that her vision problems were limited to her left eye and she exaggerated her symptoms. Tr. 605 ("decreased vision on left"); 607 ("reports baseline poor left eye sight due to past retinal detachment); 601 (noting "[s]he always experience [sic] symptoms that are out of proportion with her physical findings"), 606 (stating she has a history of "multiple uncorroboratable complaints"). Plaintiff also reported to Dr. Wei, an examining physician, only two or three episodes of limited vision in her right eye in the prior two years. Tr. 614. Finally, some of Plaintiff's activities of daily living are inconsistent with Plaintiff's reported

8 - OPINION & ORDER

visual difficulties. For example, Plaintiff reported the ability to drive and shop independently. Tr. 319, 423, 597–98.

In her reply brief, Plaintiff argues that the ALJ's use of some of these findings was improper. First, she asserts that Dr. Yang, the examining physician who administered her electroretinogram, never performed any test on her eyes as her appointment with him was cancelled. Pl.'s Reply Br. 3. Second, Plaintiff objects to the ALJ's use of Dr. Tran and Dr. Wei's records because they are not eye doctors and never performed an examination of Plaintiff's eyes. *Id*.

As to the first issue, the record does not support Plaintiff's contention. There is a progress note from Dr. Yang and clinic support staff at Oregon Health and Science University from July 15, 2015, describing both the administration of the electroretinogram and the results of the test. Tr. 615. There is no indication that the test was not performed or that this appointment was cancelled as Plaintiff contends.

As to the second issue, Plaintiff's objection is not well-taken. While Plaintiff is correct that these doctors are not eye doctors and do not appear to have performed any eye exams, chart notes from Dr. Wei and Dr. Tran still reasonably cast doubt on other evidence in the record. Both doctors' records indicate that Plaintiff's own reports as to the extent of her visual impairment are inconsistent. Dr. Tran's records also suggest that Plaintiff exaggerates her symptoms. Her tendency to exaggerate, when combined with evidence of her activities of daily living and repeated indication by providers that there was no organic reason for her right eye impairment, reasonably casts doubt on the results of her visual exams.

In short, as in *Lewis*, the ALJ appropriately resolved the various inconsistencies in the record when determining that Plaintiff's visual impairment did not meet or medically equal the

Listing for visual impairments. Because the ALJ's findings here are a supported by substantial evidence in the record, the Court affirms the ALJ's finding. *See Batson*, 359 F.3d at 1196 (affirming the ALJ's decision where substantial evidence supported his conclusion).

## II. Other Physical Impairments

Plaintiff also suggests that the ALJ erred because her other physical impairments meet or medically equal listed impairments. "The Secretary does not consider a claimant's impairment to be one listed in Appendix 1 solely because it has the *diagnosis* of a listed impairment." *Marcia*, 900 F.2d at 176 (citing 20 C.F.R. § 404.1525(d)). Instead, to meet the requirements of a listed impairment, the impairment must "satsif[y] all the criteria in the listing." 20 C.F.R. § 404.1525(d). While a condition may be medically equivalent to a listed impairment if it is "at least equal in severity and duration to the criteria of a listed impairment," *Id.* at § 404.1526, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch,* 400 F.3d at 683.

Plaintiff cites to various diagnoses and objective tests indicating that she has certain impairments that are also listed impairments. Pl.'s Opening Br. 18–24. Specifically, Plaintiff alleges that she *meets* the Listings for traumatic brain injury, disorders of the spine, and respiratory disease.[6] *Id.* She does not, however, cite to any portion of the record that suggests that these impairments satisfy all the criteria in the listing or present evidence that suggests medical equivalence. Nor does the record reveal any such evidence. Indeed, the ALJ did not address these impairments at step three and, instead, found many of these impairments to be non-severe at step

---

[6] Plaintiff also cites evidence in the record that shows Plaintiff has a "mild tortuosity of the thoracic aorta" in an otherwise negative chest X-ray with "no acute abnormalities." Tr. 497. Plaintiff construes this evidence as showing she has a "severe diagnosis" and alleges that her physician told her she may die suddenly from this condition. Pl.'s Am. Opening Br. 18. But there is no evidence in the record that supports her allegations. Moreover, Plaintiff has not cited to any evidence indicating that she has any functional limitations as a result of this impairment or that it would meet or medically equal any listed impairment.

two because there is little evidence to suggest that these impairments cause any functional limitations. Tr. 27–28.

For example, Plaintiff argues that her back condition meets Listing 1.04 for disorders of the spine. Listing 1.04 requires that the claimant have degenerative disc disease or facet arthritis "resulting in compromise of a nerve root or the spinal cord" along with either (A) evidence of nerve root compression, (B) spinal arachnoiditis, or (C) lumbar spinal stenosis resulting in psuedoclaudication. However, the X-ray cited by Plaintiff only shows that Plaintiff has "multilevel degenerative changes in facets and discs, most prominent at L4-5 and L5-S1." Tr. 496. Other than a few reports of intermittent severe lower back pain, there is no other evidence in the record to suggest that her condition meets Listing 1.04. Tr. 605, 607. And, as the ALJ noted at step two when he found her back pain was non-severe, "there is no evidence of limitations caused by this condition." Tr. 28. In other words, the fact that Plaintiff has objective evidence of degenerative changes in her spine and facet arthritis is not, alone, sufficient to show that Plaintiff's condition meets or equals a listed impairment.

Similarly, Plaintiff argues that she meets the Social Security Listing for traumatic brain injury. Pl.'s Am. Opening Br. 18–20, 22–23. In support of this argument, Plaintiff cites to a discharge summary from an emergency room appointment and the results of MRIs from 2014 and 2015. *Id*. The cited discharge summary provides a list of possible symptoms she may experience as a result of her concussion, tr. 519, and the MRIs show changes in her brain that, according to her treating provider, are normal for her age, tr. 600, 608. By contrast, the listing for traumatic brain injury requires Plaintiff to show either:

A. Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the injury; OR

> B. Marked limitation in physical functioning and in one of the following areas of mental functioning, persisting for at least 3 months after the injury:
>   1. Understanding, remembering or applying information; or
>   2. Interacting with others; or
>   3. Concentrating, persisting, or maintaining pace; or
>   4. Adapting or managing oneself.

*See* Listing 11.18. Again, Plaintiff's evidence that she suffered a concussion along with a list of *possible* side effects is not sufficient to show that Plaintiff meets or medically equals the listing for a traumatic brain injury.

Finally, Plaintiff alleges that her diagnoses of asthma and shortness of breath "meet or equals the requirements of a Listing of Social Security for respiratory disease includ[ing] severe asthma attack, shortness of hard breath, and severe chest pain." Pl.'s Am. Opening Br. 24. But there is no evidence that suggests Plaintiff's impairment meets or equals the relevant Listing for asthma, which requires the claimant to show $FEV_1$ values below a specific threshold as well as at least three hospitalizations within a 12-month period. *See* Listing 3.03. As the ALJ indicated, there is simply no evidence that this condition causes her any significant functional limitations, tr. 28, and a diagnosis—without more—is insufficient to establish that Plaintiff's impairment meets a listed impairment, *see* 20 C.F.R. § 404.1525(d). ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis.").

In sum, Plaintiff's recitation of various diagnoses is insufficient to demonstrate that the ALJ erred in determining that Plaintiff's physical impairments are non-severe and do not meet or equal listed impairments. Accordingly, the ALJ did not err in failing to address these impairments at step three of his analysis.

///

///

///

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this \_\_16\_\_ day of April, 2018.

/s/ Marco Hernández
MARCO A. HERNÁNDEZ
United States District Judge